UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| RICKY GHOLSTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:20-CV-00132-JRG-CRW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Ricky Gholston's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 1], Mr. Gholston's Addendum to § 2255 Motion [Doc. 9], Mr. Gholston's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 14], and the United States' Responses [Docs. 6, 13, & 18]. For the reasons herein, the Court will grant in part and deny in part Mr. Gholston's motion and deny his amended motion.

### I. BACKGROUND

Between 2008 and 2009, Mr. Gholston and a co-defendant robbed at gunpoint multiple Dollar General stores in East Tennessee. [Plea Agreement, Doc. 27, at 4–5, No. 2:09-CR-00032-1-JRG-CRW]. During the first robbery, which took place in Grainger County and involved the brandishing of a firearm, Mr. Gholston grabbed a store clerk's arm and forced the store clerk to take him and his co-defendant to the safe in the back of the store. [*Id.* at 4]. The store clerk surrendered over $9,000 to Mr. Gholston and his co-defendant, both of whom fled from the store and split the money. [*Id.*].

During the second robbery, which occurred in Jefferson County, Mr. Gholston accosted the store manager and demanded money from inside the store, but the manager told him that security already had picked up the store's money and taken it off site for the day. [*Id.* at 5]. Mr. Gholston pointed a firearm at the store manager and pulled the trigger, but it did not discharge. [*Id.*]. A few hours later, law-enforcement officials apprehended Mr. Gholston at an apartment, where they recovered a .32 caliber Smith and Wesson revolver in close proximity to him. [*Id.*]. In a statement to law enforcement, he admitted to pointing this firearm at the store manager and pulling the trigger. [*Id.*].[1]

A federal grand jury later indicted him in connection with the robberies, and in 2009, he pleaded guilty to one count of aiding and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951 (Count One);[2] one count of aiding and abetting the using and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A) (Count Two); one count of aiding and abetting an attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 2 and 1951 (Count Three); and one count of using and carrying a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Four). With a criminal history category of V and a total offense level of 21, Mr. Gholston had a guidelines range of 70 to 87 months' imprisonment. [Statement of Reasons at 1 (on file with the Court)]. In

---

[1] State prosecutors later charged Mr. Gholston with attempted first-degree murder. [PSR ¶ 73 (on file with the Court)].

[2] "The Hobbs Act prohibits interference with interstate commerce by either robbery or extortion." *United States v. Debs*, 949 F.2d 199, 200 (6th Cir. 1991) (footnote omitted). The Hobbs Act states: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). The Act defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." *Id.* § 1951(b)(1).

response to his motion for a variance, however, the Court varied downward and sentenced him to 48 months for each Hobbs Act violation (Counts One and Three), with those sentences to run concurrently to each other. [J., Doc. 58, at 3, No. 2:09-CR-00032-1-JRG-CRW; Statement of Reasons at 2–3].

"Congress," however, "has made it a separate offense to use or possess a firearm in connection with a violent . . . crime." *Dean v. United States*, 581 U.S. 62, 64 (2017) (citing 18 U.S.C. § 924(c)). "Violators of § 924(c) face a mandatory minimum sentence of five years in prison, over and above any sentence they receive for the underlying crime of violence," but "[t]he minimum sentence rises to 7 years if the defendant brandishes the firearm." *Davis v. United States*, 139 S. Ct. 2319, 2324 (2019). A second violation § 924(c) carries a twenty-five year mandatory minimum sentence. 18 U.S.C. § 924(c)(1)(C)(i). "Those [mandatory minimum] sentences must be in addition to and consecutive to the sentence for the underlying predicate offense." *Dean*, 581 U.S. at 64; *see* 18 U.S.C. § 924(c)(1)(D)(ii).

For the convictions under § 924(c)(1)(A), Mr. Gholston, therefore, faced a mandatory minimum sentence of 7 years for the first conviction (Count Two) and 25 years for the second conviction (Count Four)—sentences that the Court had to impose consecutively to each other and in addition and consecutively to the predicate offenses, i.e., the Hobbs Act violations. 18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(1)(C)(i), (D)(ii). The Court therefore sentenced Mr. Gholston to 84 months on Count Two, to run consecutively to the sentences in Counts One and Three, and to 300 months on Count Four, to run consecutively to the sentences in Counts One, Two, and Three, for a net effective sentence of 432 months. [J. at 3]. He did not appeal his sentence, but he now moves the Court to vacate, set aside, or correct his sentence under § 2255. The United

3

States opposes his motion. Having carefully reviewed and considered his motion and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held

4

that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

In seeking relief under § 2255, Mr. Gholston brings numerous claims. First, he alleges that his attorney was constitutionally ineffective because he wrongly advised him that the State

5

would elect not to prosecute him if he entered into a plea agreement with the United States. [Pet'r's Mot. at 4]. Second, he asserts that his convictions under § 924(c)(1)(A) are now invalid under *United States v. Davis*, 139 S. Ct. 2319 (2019). [*Id.* at 5]. And third, he maintains that he is entitled to compassionate release under 18 U.S.C. § 3582(c). [*Id.* at 7].

Mr. Gholston, however, has also filed an addendum to his § 2255 motion as well as an amended § 2255 motion. In the addendum, he contends that the 25-year mandatory minimum sentence was an "erroneous[] calculation of his sentence," [Pet'r's Addendum at 3], and "should be removed" because "he has never been convicted of a § 924(c) offense" and instead "was charged and convicted of § 922(g)," [*id.* at 2]. Lastly, in his amended § 2255 motion, he argues that the Supreme Courts' decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022) requires this Court to vacate his convictions under § 924(c)(1)(A). [Pet'r's Am. Mot., Doc. 14, at 4]. The United States contends that Mr. Gholston's claims are untimely and otherwise lack merit but concedes that he is entitled to relief under *Taylor*. [United States' First Resp., Doc. 6, at 4–5; United States' Third Resp., Doc. 18, at 1, 3].

**A. The Timeliness of Mr. Gholston's Claims**

Section 2255's one-year statute of limitations states:

The limitation period shall run from the latest of—

>    (1) the date on which the judgment of conviction becomes final;
>
>    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
>    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

6

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Under § 2255(f)(1), the Court's judgment against Mr. Gholston became final on the expiration of the last day on which he could have timely appealed that judgment, *Benitez v. United States*, 521 F.3d 625, 629 (6th Cir. 2008); *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004), and that day was March 2, 2011—the two-week mark from the Court's entry of judgment on February 16, 2011, *see* Fed. R. App. P. 4(b)(1) (stating that a defendant must tender his notice of appeal within fourteen days of a district court's entry of judgment). Mr. Gholston, however, filed his § 2255 motion on June 22, 2020—over nine years later. His claims, as well as his supplemental and amended claims—except for his claims under *Davis*[3] and *Taylor*, which the Court will now go on to address—are therefore untimely under § 2255(f)(1), and he does not argue that he is entitled to equitable tolling.[4]

## B. Mr. Gholston's Claims under *Davis* and *Taylor*

The Supreme Court decided *Davis* on June 24, 2019, and Mr. Gholston filed his claim under *Davis* within one year of that date, on June 22, 2020, so this claim is timely under § 2255(f)(3). The Supreme Court's holding in *Davis* is relevant to Mr. Gholston's convictions under § 924(c)(1)(A). Again, "Congress," under § 924(c)(1)(A), "has made it a separate offense

---

[3] The Sixth Circuit has determined that the Supreme Court established a new rule of constitutional law in *Davis* and that that rule is retroactively applicable on collateral review. *In re Franklin*, 950 F.3d 909, 910–11 (6th Cir. 2020).

[4] To the extent Mr. Gholston claims that he is entitled to compassionate release under 18 U.S.C. § 3582(c), he may refile those claims, and those claims only, in his underlying criminal case. A proceeding under § 2255 is not the appropriate forum for those claims. *See United States v. Mattice*, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020) ("[A] compassionate release motion is not the proper vehicle for arguments 'that were or could have been raised on direct appeal or in a [28 U.S.C.] § 2255 motion.'" (quotation omitted)); *United States v. Handerhan*, 789 F. App'x 924, 926 (3d Cir. 2019) ("[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."); *United States v. Proge*, No. 2:12-cr-20052-06, 2021 WL 3857440, at *2 (E.D. Mich. Aug. 30, 2021) ("[A] federal prisoner cannot raise claims to vacate a sentence under § 2255 in a motion for compassionate release." (citation and footnote omitted)).

to use or possess a firearm in connection with a violent . . . crime," *Dean*, 581 U.S. at 64, and § 924(c)(1)(A) defines "crime of violence" in two sub-parts: in § 924(c)(3)(A), which is known as the use-of-force or elements clause, and in § 924(c)(3)(B), which is known as the residual clause, and those two subsections state:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)–(B).

In *Davis*, the Supreme Court held that § 924(c)(3)(B)'s definition of crime of violence is unconstitutionally vague, *Davis*, 581 U.S. at 2336, but importantly, the constitutionality of § 924(c)(3)(A)'s definition was never at issue, so it "survived *Davis*," *In re Franklin*, 950 F.3d 909, 911 (6th Cir. 2020); *see* [United States' First Resp. at 4 (asserting that *Davis* "invalidated 18 U.S.C. § 924(c)(3)(B))"]. The survival of § 924(c)(3)(A)'s elements clause is fatal to Mr. Gholston's *Davis* claim because, after *Davis*, the Sixth Circuit held that aiding and abetting a Hobbs Act robbery—the offense for which Mr. Gholston was convicted in Count One—is a crime of violence under the elements clause. *United States v. Richardson*, 948 F.3d 733, 741–42 (6th Cir. 2020). So *Davis* offers the Court no grounds to vacate Mr. Gholston's related § 924(c) conviction in Count Two.

The only remaining issue is whether the offense for which Mr. Gholston was convicted in Count Three—aiding and abetting an *attempted* Hobbs Act robbery—qualifies as a crime of violence under the elements clause. If yes, his related § 924(c) conviction in Count Four stands,

8

but if no, it cannot stand. *Taylor*, in which the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under the elements clause, 142 S. Ct. at 2020–21, resolves this issue in Mr. Gholston's favor—as the United States, again, concedes—and the Court therefore must vacate his conviction and sentence for Count Four.[5]

The United States, however, argues that the Court should vacate *all* of Mr. Gholston's convictions and conduct a plenary resentencing hearing. [United States' Third Resp. at 4, 6]. In making this argument, it maintains that "[w]here, as here, a § 924(c) conviction is invalidated, courts 'routinely vacate the defendant's entire sentence on all counts . . . so that the district court may increase the sentence for any remaining counts if such an increase is warranted." [*Id.* at 4 (quoting *Davis* at 2336]. According to the United States, "such an increase is warranted" in Mr. Gholston's case because, with the vacatur of his conviction for Count Four, a six-level enhancement under USSG § 2B3.1(b)(2)(B) would now apply to him—namely to his combined offense-level for Counts One and Three—and increase his guidelines range for those counts from 70 to 87 months to 110 to 137 months. [*Id.* at 4–5]. Section 2B3.1(b)(2)(B)'s enhancement applies when a "firearm was otherwise used" in aiding and abetting an attempted Hobbs Act robbery. USSG § 2B3.1(b)(2)(B).

Although the probation officer acknowledged that Mr. Gholston's conduct triggered the enhancement, he did not apply it because, in tandem with his conviction in Count Four for

---

[5] The Sixth Circuit has retroactively applied *Taylor* to cases on collateral review. *See Wallace v. United States*, 43 F.4th 595, 601 (6th Cir. 2022) (reversing the district court's denial of the petitioner's § 2255 motion because "*Taylor* recently held that attempted Hobbs Act robbery does not" constitute a crime of violence under § 924(c)(3)(A)'s elements clause). Neither the Supreme Court nor the Sixth Circuit, however, has yet expressly held that *Taylor* is retroactively applicable on collateral review. *But see United States v. Craig*, No. 1:14cr32/MW/HTC, No. 1:22cv66/MW/HTC, 2022 WL 14103717, at *2 n.4 (N.D. Fla. Sept. 26, 2022) ("*Taylor* would be retroactively applicable to a challenge to [a] . . . § 924(c) sentence, because in that context the case would be a new substantive rule[.]" (citing *United States v. Welch*, 578 U.S. 120, 129 (2016))); *Hartsfield v. United States*, 2022 WL 4295979, ___ F. Supp. 3d ___, at *5–8 (S.D. Fla. Sept. 19, 2022) (relying on *Taylor* to grant the petitioner's § 2255 motion and vacate the petitioner's § 924(c) conviction).

9

using and carrying a firearm in relation to a crime of violence, it would have resulted in double counting. [PSR ¶ 32]; *see United States v. Duke*, 870 F.3d 397, 404 (6th Cir. 2017) ("It is well-established that 'impermissible "double counting" occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways.'" (quotation omitted)); *see also* USSG § 2K2.4, comment, n.4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when determining the sentence for the underlying offense."). Now that *Taylor* invalidates Mr. Gholston's conviction and sentence for Count Four, the danger of double counting is no longer an impediment to the application of § 2B3.1(b)(2)(B) to Count Three.

The United States therefore urges the Court to resentence Mr. Gholston and, in doing so, to apply § 2B3.1(b)(2)(B)'s six-level enhancement and a new guidelines range of 110 to 137 months on the robbery offenses, i.e., Counts One and Three. Upon vacating Mr. Gholston's conviction and sentence for Count Four, the Court has the option of resentencing him or simply correcting his sentence. 28 U.S.C. § 2255(b); *see Ajan v. United States*, 731 F.3d 629, 633 (6th Cir. 2013) (recognizing that district courts have "statutory discretion in granting a post-§ 2255 remedy" and that § 2255 "gives [them] wide berth in choosing the proper scope of post-§ 2255 proceedings" (quotation omitted)); *see also United States v. Flack*, 941 F.3d 238, 241 (6th Cir. 2019) ("A district court 'corrects' a defendant's sentence when its action is arithmetical, technical, or mechanical," and "[i]n contrast, a district court resentences the defendant, for purposes of § 2255, when it revisits the § 3553(a) factors and determines anew what the sentence should be." (citations omitted)). In pushing for the former option, a plenary resentencing, the United States

relies on a concept known as "sentence-packaging," a theory that the Fourth Circuit has defined well:

> Under this theory, a sentence is not merely the sum of its parts; instead, because the district court crafts a sentence by considering all of the relevant factors as a whole, an appellate court that rejects one of the grounds on which the sentence is based unbundles the entire sentence package. . . . [T]he district court may not simply re-enter the non-offending portions of the original sentence, but must conduct a new resentencing hearing to reformulate the entire sentence package.

*United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). The Sixth Circuit has adopted this sentence-packaging concept and has acknowledged that it applies not only on direct appeal but also in § 2255 proceedings. *United States v. Thayer*, Nos. 96-2348, 96-2350, 1997 WL 810007, at *2–3 (6th Cir. Dec. 29, 1997).

Specifically, the Sixth Circuit has held that sentence packaging applies "in the limited circumstances . . . a § 924(c) conviction is overturned in a § 2255 proceeding," and under these circumstances, "a district court has jurisdiction to revisit the sentencing scheme that specially crafted the original sentence for the underlying drug conviction [or crime of violence]." *Id.* at *3 (citations omitted). So when a defendant's § 924(c) conviction is invalid, the United States "routinely argues" for the vacatur of "the entire sentence so that the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence." *Dean*, 581 U.S. at 68–69 (citation omitted). "And appellate courts routinely agree." *Id.* at 69 (citation omitted).

But at the time of Mr. Gholston's sentencing in 2011, the Sixth Circuit was not one of those appellate courts because it did not view a § 924(c) conviction and the predicate crime of violence as having an interdependent relationship. In 2007, the Sixth Circuit, in *United States v. Franklin*, 499 F.3d 578, held that district courts must ignore § 924(c)'s lengthy mandatory minimum sentence when determining the appropriate sentence for the predicate offense. *Id.* at

11

586. In other words, district courts had to "calculate the appropriate term of imprisonment for each individual [predicate] offense" while "disregard[ing] whatever sentences the defendant may also face on other counts." *Dean*, 581 U.S. at 68. *Franklin* was the law of this circuit until 2017, when the Supreme Court decided *Dean*, in which it held that district courts may in fact consider § 924(c)'s lengthy mandatory minimum sentence when calculating a joint sentence for the predicate offense. *Id.* at 69.

The United States does not acknowledge that *Franklin* was the law of this circuit at the time of Mr. Gholston's sentencing or that *Franklin* required district courts, when determining the appropriate sentences for a § 924(c) offense and the predicate crime of violence, to fashion sentences that were unrelated and independent of each other, not sentences that were packages or parcels of each other. Instead, the United States argues that a sentence-packaging concept applies to Mr. Gholston's sentence by relying on *Pasquarille v. United States*, 130 F.3d 1220 (6th Cir. 1997). In *Pasquarille*, the Sixth Circuit held that the district court, which had vacated the defendant's conviction under § 924(c), did not err by recalculating the guidelines range for the predicate offense and applying a previously unavailable enhancement because the predicate offense was a "component[] of a single comprehensive sentencing plan." *Id.* at 1221–22 (citation omitted). But *Pasquarille* predates *Franklin*, and for defendants like Mr. Gholston who faced sentencing for a § 924(c) conviction while *Franklin* was still good law, the Sixth Circuit has rejected the notion that a sentence-packaging theory applied to the § 924(c) offense and the predicate offense.

In *Augustin v. United States*, Case No. 1:19-cv-328, Case No. 1:15-cv-237, Case No. 1:09-cr-187, 2020 WL 207942, at *3 (E.D. Tenn. Jan. 14, 2020), this Court had sentenced the defendant in 2011 for multiple offenses, including a violation of § 924(c) and kidnapping in

12

violation of 18 U.S.C. § 1201, which at the time qualified as a crime of violence. *Id.* at *1. The Court, in the wake of *Davis*, vacated the defendant's § 924(c) conviction and chose simply to correct his sentence rather than hold a rehearing. *Id.* at *3. Although the United States pointed out that the Court, in the absence of the § 924(c) conviction, could apply a two-level firearms enhancement to the predicate kidnapping offense—an enhancement that was unavailable at sentencing—the Court declined to do so because the additional two levels did not alter the guidelines range for the kidnapping offense. *Id.* at *3.

The defendant appealed the Court's decision to correct his sentence without holding a resentencing hearing, but the Sixth Circuit affirmed this Court's decision because "the § 924(c) sentence did not unravel the rest" of the sentence. *United States v. Augustin*, 16 F.4th 227, 232 (6th Cir. 2021). Like this Court, the Sixth Circuit recognized that the defendant's guidelines range was the same "with and without the § 924(c) conviction." *Id.* Citing *Franklin*, the Sixth Circuit, importantly, also recognized that the § 924(c) conviction could "stand independently" because "[w]hen [the defendant] was originally sentenced, circuit precedent required the district court to set an appropriate sentence for each underlying conviction without considering the sentencing effects of his § 924(c) conviction." *Id.* at 232–33 (citing *Franklin*, 499 F.3d at 583). In other words, the "§ 924(c) sentence played no role in the district court's calculation of [the defendant's] other sentences," and "[b]ecause of that, [the Sixth Circuit] [could not] conclude that those sentences [were] so connected with his § 924(c) sentence that they must fall with it." *Id.* at 233. *Augustin* therefore vitiates the United States' argument that sentences for a § 924(c) conviction and a predicate crime of violence comprise a sentencing package and that vacatur of a § 924(c) conviction requires resentencing "on all counts," [United States' Third Resp. at 4 (quoting *Davis*, 139 S. Ct. at 2336)]—at least to the extent the United States attempts to direct

13

that argument at defendants like Mr. Gholston, whose sentencing took place while *Franklin* was good law.

Even so, the Court acknowledges that "§ 2255 gives [it] jurisdiction and authority to reevaluate [an] entire aggregate sentence to ensure that the defendant receives the appropriate sentence on the remaining count[s]," *Pasquarille*, 130 F.3d at 1222, and "appropriate exercises of jurisdiction may not turn entirely on 'sentencing package' concepts, but must also consider the effects of the Sentencing Guidelines," *Thayer*, 1997 WL 810007 at *2 (citing *United States v. Smith*, 103 F.3d 531, 534–35 (7th Cir. 1996)). Whether Mr. Gholston's § 924(c) conviction (Count Four) and Hobbs Act conviction (Count Three) do or do not form a sentencing package, the fact remains that the invalidation of his § 924(c) conviction means that § 2B3.1(b)(2)(B)'s six-level enhancement now applies to him, and it is therefore an effect of the guidelines that the Court "must also consider." *Thayer*, 1997 WL 810007 at *2; *see id.* at *3 (stating that if not for the defendant's § 924(c) conviction, a firearms enhancement would have been "required"); *see also Smith*, 103 F.3d at 535 ("[I]f the mandatory sentence [under § 924(c)] is set aside, nothing should prevent the imposition of the enhancement. In that sense, the idea of the 'sentencing package' remains a perfectly viable concept.").

In addition, unlike the enhancement at issue in *Augustin*, the enhancement at issue in Mr. Gholston's case does in fact increase Mr. Gholston's guidelines range on Counts One and Three, and this new guidelines range is another effect of the guidelines that the Court must consider. *See Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (stating that "[a] district judge must include the Guidelines range in the array of factors warranting consideration"). With this new guidelines range now in play, the Court cannot simply correct Mr. Gholston's sentence on Counts One and Three through arithmetical, technical, or mechanical action. Indeed, "[t]o a

14

prisoner,' this prospect of additional 'time behind bars is not some theoretical or mathematical concept.'" *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018) (quotation omitted); *cf. United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013) ("Failure to apply the correct Guidelines range generally constitutes plain error." (citations omitted)); *United States v. Martin*, 291 F. App'x 765, 772 (6th Cir. 2008) (holding that the district court was required to hold a resentencing hearing when its misapplication of the guidelines affected the defendant's total offense level). The Court must therefore hold a resentencing hearing at which Mr. Gholston is present and at which the Court considers whether the new guidelines range for Counts One and Three, alongside 18 U.S.C. § 3553(a)'s factors, serves the objectives of sentencing.

The only remaining question is whether the Court must also resentence Mr. Gholston on Count Two or otherwise correct his sentence on Count Two, but neither party provides the Court with a basis to do either. The Court has already rejected the United States' argument that Mr. Gholston's conviction for the § 924(c) offense in Count Two forms a sentencing package with his underlying Hobbs Act robbery (Count One), because "[w]hen [Mr. Gholston] was originally sentenced, circuit precedent required the district court to set an appropriate sentence for each underlying conviction without considering the sentencing effects of his § 924(c) conviction." *Augustin*, 16 F.4th at 232–33 (citing *Franklin*, 499 F.3d at 583). And as for "the effects of the Sentencing Guidelines" on Count Two, *Thayer*, 1997 WL 810007 at *2 (citation omitted), the United States does not contend that Mr. Gholston's guidelines range on Count Two is now subject to change or that § 3553(a)'s factors or Mr. Gholston's post-incarceration conduct warrant a higher, or lower, sentence on Count Two. Instead, the United States merely acknowledges that "Gholston remains subject to a statutorily mandated consecutive 84-month

15

term for his § 924(c) conviction on Count Two," [United States' Third Resp. at 5], which is the precise term that the Court imposed on Count Two.

In fairness to Mr. Gholston, though, the Court would be remiss if it did not mention the Supreme Court's decision in *Dean*, which, ostensibly, offers him a basis to argue that the effects of his eighty-four-month term in Count Two warrant the alteration of his net sentence. Again, in *Dean*, the Supreme Court held that district courts have license to consider § 924(c)'s lengthy mandatory minimum sentence when crafting a joint sentence for the predicate offense, *Dean*, 581 U.S. at 69, and again, at the time of Mr. Gholston's sentencing, *Franklin* prevented the Court from considering the eighty-four-month mandatory minimum sentence in Count Two when it fashioned his sentence for his Hobbs Act robberies. A resentencing hearing would allow the Court to take this consideration into account for the first time. *See United States v. Henry*, 983 F.3d 214, 216–17 (6th Cir. 2020) ("At the time of [the defendant's] 2016 resentencing, [our] decision in [*Franklin*] prohibited the district court from considering the lengthy mandatory-minimum sentences for his § 924(c) convictions when sentencing him for the bank robbery convictions. As a result, we 'remand[ed] the case for the limited purpose of resentencing him and allowing the district court to consider the mandatory minimum sentences applicable to him.'" (alterations in original) (citation and quotation omitted))).

In a collateral proceeding like this one, however, *Davis* does not entitle Mr. Gholston to relief or to a rehearing because the Sixth Circuit has held that it is not retroactively applicable to cases on collateral review. *Whitson v. United States*, No. 22-5592, 2022 WL 18232150, at *5 (6th Cir. Dec. 13, 2022); *Harper v. United States*, 792 F. App'x 385, 394 (6th Cir. 2019). Although the Court can consider nonretroactive amendments to the Sentencing Guidelines when arriving at a sentence in a resentencing hearing, *Concepcion v. United States*, 142 S. Ct.

2389, 2400 (2022); *United States v. Taylor*, 648 F.3d 417, 425 (6th Cir. 2011), the Court is unaware of any amendment that the Sentencing Commission has promulgated to incorporate *Dean*'s holding into the guidelines, *see Dillon v. United States*, 560 U.S. 817, 826 (2010) ("The [Sentencing Reform Act] charges the Commission both with deciding whether to amend the Guidelines and with determining whether and to what extent an amendment will be retroactive." (footnote omitted) (internal citation and citation omitted))). The Court therefore finds no basis to vacate Mr. Gholston's conviction or sentence for Count Two, or to consider *Dean*'s teachings at the resentencing hearing.

In sum, the appropriate exercise of jurisdiction in this case requires the Court to consider the full effects of the guidelines, and the vacatur of Mr. Gholston's § 924(c) conviction in Count Four affects his aggregate sentence in important ways that implicate the guidelines, including (1) the application of § 2B3.1(b)(2)(B)'s six-level enhancement to his combined offense level for Counts One and Three and (2) the higher guidelines range that applies to him on Counts One and Three as a result of § 2B3.1(b)(2)(B)'s six-level enhancement. The Court will therefore grant Mr. Gholston's § 2255 motion to the extent that he seeks relief under *Taylor* and vacate his conviction and sentence for Count Four; vacate his sentences for Counts One and Three; deny his § 2255 motions in all other respects; and hold a resentencing hearing so that it can revisit the sentences it imposed for Counts One and Three.

### C. Certificate of Appealability

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Mr. Gholston to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing, the petitioner must

demonstrate that reasonable jurists would find the Court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court concludes that reasonable jurists would not find that its dismissal of Mr. Gholston's claims as time-barred is debatable or wrong. In addition, having addressed the merits of his claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court therefore declines to issue a certificate of appealability to Mr. Gholston.

## IV. CONCLUSION

As the petitioner under § 2255, Mr. Gholston meets his burden of establishing that he is entitled to the vacatur of his conviction and sentence for Count Four, in light of the Supreme Court's decision in *Taylor*. He fails, however, to meet his burden of showing that his sentences and convictions as to any of the remaining counts are in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error. His motion [Doc. 1] is therefore **GRANTED** only to the extent that he requests the vacatur of his conviction and sentence for Count Four and to the extent that the vacatur of his conviction and sentence for Count Four requires the vacatur of his sentences for Counts One and Three. His motion is **DENIED** in all other respects. His Amended Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody [Doc. 14] is likewise **DENIED**. This case is hereby **DISMISSED with prejudice**, and the Court **ORDERS** as follows:

1. Mr. Gholston's conviction and sentence for Count Four of the Indictment [Doc. 3, 2:09-CR-00032-1-JRG-CRW], for using and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), are hereby **VACATED**.

2. Mr. Gholston's sentences, but not his convictions, for Counts One and Three of the Indictment are likewise **VACATED**, for the reasons that the Court has stated in this opinion.

3. Mr. Gholston's resentencing hearing is scheduled for Tuesday, May 16, 2023, at 9:00.

4. In the interests of justice, Wayne Stambaugh, Esq., a member of the CJA panel, is **APPOINTED** to represent Mr. Gholston at his resentencing hearing. 18 U.S.C. § 3006A(a)(2)(B).

5. The United States Probation Office is **DIRECTED** to prepare and file a revised presentence investigation report, in which it applies the 2009 version of the United States Sentencing Guidelines Manual.[6]

6. Mr. Gholston **SHALL** remain in custody pending his resentencing hearing.

7. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

---

[6] Although the United States, citing Eighth Circuit precedent, argues that the Court should apply the current version of the guidelines, [United States' Third Resp. at 6], "the rule in this circuit is that upon remand for resentencing, the court should apply the version of the guidelines that properly governed the original sentencing," *United States v. Rorrer*, 161 F. App'x 518, 521 (6th Cir. 2005) (citing *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)); *see United States v. Fox*, 712 F. App'x 486, 490 (6th Cir. 2017) (affirming the district court's decision to "apply[] on remand the 2014 Guidelines Manual that was in effect at [the defendant's] original sentencing").